Good morning, Your Honors. On behalf of the petitioner, Girish Sareen, the immigration judge in the BIA decision has to be vacated as the denied missile here due process under the law and misstates the facts in the law. The question over here is, does the frivolous warnings apply in this case? They don't. Primarily because, number one, my client's first application was filed in 1994. The law specifically came into effect on April 1997 with the change of the statute. That application was dismissed under Section 208-10 when she didn't appear for her interview. That's on page 00241, and that application was terminated by Immigration Actualization Service, which is now part of Department of Homeland Security. The second application, though, had the warning, correct? There was no warning given on the second application. The second application was filed by me in court in April 2001. Now, when you come into that fact sequence, Your Honor, that you come into another rule that came into effect after 1996, and that was an application for asylum has to be filed within one year, whichever comes first, either April 15, 1998, or before that. This was filed in 2001. So there couldn't be any frivolous warnings because there was no application for asylum. The judge basically... Basically... I'm sorry. I'm just getting feedback. I thought I was getting a question. I apologize. The judge basically came upon himself to assume facts and speculate. He never once followed the law. He never once listened to any of the testimony. My client never ever went forward on her asylum. There isn't a single case anywhere in the United States where you get a frivolous warning where somebody doesn't go forward on asylum. She never went forward on any asylum case. This was an adjustment application. She was applying as a skilled worker. There was a contradiction in her application with three arrests, and she never assumed those facts. Counsel over here will argue, as he argues in his brief, that basically the signing of the application is a frivolous warning. No case in the United States has said that. The leading case on this is the BIA in the matter of Y.L., which was decided last April, and it says two things. One is you have to give written notice of a frivolous warning, and you have to give an oral notice. That wasn't given. So the issue of frivolousness doesn't need to play. Could you stop for a second, please? I don't quite understand what you just told us. You say that because there's no case in the United States, when there's a written warning in the application and the person knows the warning is there, and yet they sign a frivolous application, that it's OK, they're home free? I didn't say they were home free. The frivolous warning has severe consequences, Your Honor. It's like a death sentence for immigration. It bars an individual from life. That's true, but if people make frivolous applications, the government's got a right to say no, thank you. That ends your opportunity to come into the United States. So the death warrant doesn't bother me too much. What bothers me is that if a person actually knows from their application, because it says on the application a warning about frivolousness, that why isn't that sufficient, that if they go ahead under those circumstances, that they should be determined to be frivolous? Because the B.I. ruled on that and said, no, it has to be given in writing and orally. They say a written notice has to be given. That's what the code section says, too. Counsel, counsel, I have a question. When she signed the first application for asylum, my understanding is there was a written warning on that application. And doesn't the statute talk about making a frivolous application? Say that you have to have a warning at the time the application was submitted or was made. Thank you very much. If she signed the application and had the warning on it, why isn't that adverse to her? Because the rule came into effect on April 1st, 1997. The application, the first application, was a prior application that was filed in 1994. There was no frivolous warnings that Congress passed until 1996. I'm looking at the May 24th, 2001 application that your client signed, and it does have the warning right above her signature. That's the second application. That's the second application. So she received that warning when she filed the second application, which was just a more detailed version of the first application. The second application only comes into play, Your Honor, if there's an asylum claim. She's filing this. The first one is abandoned, and the second one is filed in 2001. She came in 1992. There is no asylum claim. There's a withholding claim. So the issue of frivolousness doesn't come into play. The asylum claim was still open. No, it wasn't. There was no asylum claim, because the asylum claim is barred under the law, under IRA-IRA, because it wasn't filed prior to April 1, 1998. The statute is very clear on that. If you go back to the exhibit on page 00241, the application was denied terminated. The second application was an application for withholding, and it requires written notice and as well as oral notice. It's a blank issue. The judge knew that. That's why he never gave any warnings. I would like to repeat the remainder. Why would she sign the application if she wasn't seeking asylum? She signed the second application to preserve her right because she had a fear of returning to India because she was involved in an organization. But if she signed it, why aren't there consequences for signing something that she knew was frivolous? There are consequences if you apply for asylum. The law specifically states an asylum has to be filed within 12 months of your entry. She filed that nine years after her entry. The law is very specific after a removal proceeding and after IRA-IRA was passed that you have to file it within one year. So she did not have an asylum application. That's why it doesn't come into play. I would like to just keep my remainder of my time for rebuttal. I understand. I'm not trying to play around the law. The law is very specific.  She may believe she was eligible for asylum. The law states she wasn't. So it's a moot issue. But if she files a frivolous application and she's not eligible for asylum, but she is still seeking asylum and filing frivolous papers, why doesn't that invoke the statute? Because she didn't file a frivolous application. There was one issue, and the issue was her free arrest. She claimed fear of Muslims in India. She was a member of a social group. She wasn't wasting the Court's time. There was a – she never assumed the fact that she was ever arrested. That was in her application. That was a contradiction. If I would have the remainder of my time. Thank you. May it please the Court. Jeffrey Lee is on behalf of the Respondent. In this case, the Petitioner's arguments relating to notice for the frivolous warnings were not properly raised to the Board. Therefore, she's failed to exhaust those claims not properly before this Court. Even if we're to address them, even if the Court finds that they were properly exhausted, there is no requirement the warnings be given orally or in writing. Perhaps my reading of Y.L. is different. The – Y.L. specifically said there was no – they weren't contesting the issue of notice, so they didn't actually address that issue. In the facts section of the case, they do indicate what the warnings that were given in that particular case were, and they were written – there was oral and there was the application on – or the warning on the application. But there is no requirement in the statute or in a case law that this actually be given orally or in writing. And it's interesting because if one looks at the regulations in the statute regarding in absentia proceedings, it's actually required that they give the warnings orally and in writing in that case. So clearly, if Congress intends that these be given in a specific way, they're more than able to specify that in writing the statutes. But they did not do so in this case. Furthermore, the application has the warning in bold letters, conspicuously placed right above the signature line. It says, warning, if you file a frivolous asylum claim, you will be barred from relief for, you know, the rest of your life. Similarly, above the attorney's signature line, it says if you knowingly file a frivolous claim, you can face civil penalties. So then both parties in this case signed this application where the record clearly shows that, you know, the information in the application is wrong. Well, what about the – your opponents comment that because the asylum claim became moot, it's no longer relevant to a finding of frivolousness? The fact of the matter is, is that on May 21, 2001, she did in fact file her second asylum claim. Whether or not at the time she didn't realize that she could not get asylum or whether she was secretly applying for withholding removal, the fact of the matter is that she applied for asylum by filing the application which contained all these inaccuracies and basically made up claims. At the date of the final hearing, the immigration judge notes that, you know, yes, you're applying for adjustment, but your fallback here is asylum. There's no mention that the IJ was going to deny the claim based on the failure to file within one year and in fact address the issue in terms of the frivolousness. And that brings us to the second aspect, which is the asylum application was not withdrawn. There is no evidence that, you know, even if she didn't wish to go through with her asylum application or her withholding or whatever application, it was still in play, and because it was still in play, it was still part of the record and still a base for potential relief if the immigration judge denied her adjustment application. In this case, the evidence is very clear that the application was itself frivolous. Her entire claim is premised on the fact that she was given or she was arrested because of her participation in a certain social group. The second application is in fact more detailed than the first in that it gives the number of arrests, the date of the arrest, the fact that she was physically beaten, I believe, by the police in certain instances. So it's actually a more detailed claim than the original one. When asked the question, have you ever been arrested anywhere in the world, she said no. There's then about 20 pages of testimony, back and forth, where they keep asking her questions like, why does it say that you were arrested, and she says, I was never arrested, or that never happened, or I was never detained, and things of that nature. So clearly, the immigration judge was correct in saying this complete lack of factual evidence in this case was frivolous. Matter of OIL requires that the immigration judge give them an opportunity to explain. In this case, clearly he did. There's 20 pages of him asking her why it says all these things happened when she keeps testifying that they did not, in fact, happen. At one point, he actually says, you know, did you make up your claim, and she again says, you know, that stuff didn't happen. So in this case, it's very clear the immigration judge properly found this application was frivolous, and while opposing counsel has argued that, you know, they did not receive sufficient notice, I'd argue primarily that they did not raise the issue to the board and therefore failed to exhaust it. And moreover, there is no requirement that the notice be given in any specified form, and that we feel that the fact the application itself has the warning on it is sufficient to demonstrate that she was on notice that the following of this application could have these ramifications if it was found to be frivolous. Now, in your OIL says it's good practice, I think is how they frame it. It's good practice for the IJ to explain to the parties that he's considering or she's considering making a frivolous finding. Now, the IJ didn't do it in this case. How does that affect the validity of his ruling? There's a footnote in OIL that says, you know, this is not some kind of mechanically applied rule. There are situations where the evidence is so clear on its face that this is what's going on that the individual judge doesn't have to actually say, you know, I am going to make a frivolous claim to defend herself. Moreover, in this case, he actually does say, you know, to the effect, did you make up this entire claim? Which, I mean, I would say has the effect of basically saying, is this claim frivolous, which I would say would be proper evidence that, you know, you were on notice this was going to be a potential issue in the case. And if there are no further questions, based on the aforementioned reasons, we request the petition be denied. Thank you. Thank you very much, Your Honor. Counsel, unfortunately, is misstating the law. What happens in immigration court is in every immigration court in the United States, a written notice is given of frivolous warnings after April 1, 1997. Every immigration judge gives a written notice to every application for asylum that's filed in open court. You can ask any trial attorney who works in immigration court. That is the law. That is the law. What happens, we have to have something in the record. We can't use what counsel believes is the situation. So you just have to restrict yourself to the record. I'm stating on the record under Section 208 of the statutory provision of the Immigration Nationality Act, it says notice has to be given to the alien, and the alien must be told the consequences of knowingly filing. Notice is key. Notice is the key issue for the frivolous warnings to come into play. There is no notice in this case, and counsel is trying to backtrack. I thought we agreed that there was notice in the asylum application that your client signed. That is not notice under the law under 208 or under matter of YL. There is no BIA case saying notice is once you sign it. The YL decision says you have to knowingly let the alien know. I'm not trying to backtrack on any issue. My client did not make a frivolous application. My client never went forward on her asylum application. She was there on an adjustment. When counsel states she was given an opportunity, she was given an opportunity to make and respond to the issue of her arrest, which was asked in conjunction to her discretionary form of relief, which was an adjustment application. There was no application of asylum pending before the judge at that time. The government attorney says this asylum application was never withdrawn. Was it withdrawn? It was never withdrawn. And neither did she go forward on it. She went forward on an adjustment. The only application she was sworn on was the adjustment. To get into the swearing in of my client, her signature had to be acknowledged. Is that your signature? Did you understand what you were signing? Do you understand the consequences of this application? It's nowhere in the record. And there is no BIA case stating that once you file an asylum, that notice is sufficient. It requires written notice. Notice is key. Thank you very much. Before you leave the podium, there's some indication here that the notice wasn't raised, the issue, before the board. I'm sorry. I didn't quite hear you. There's some indication in the record that the notice issue was not raised before the board. Her due process was raised, which is being raised over here. Everything was raised that you have rightfully violated. Let me re-ask the question. Yes, Your Honor. There's an indication here that lack of notice was not raised before the board. That is not true. It was raised that she wasn't given any notice of her application. As an issue before the board. Before the BIA, the appeal brief raises it that she wasn't sworn to her application or given any notice of frivolous warnings. Thank you. This case is submitted, and we'll take a brief recess.
judges: Wallace, Gould, Ikuta